# EXHIBIT B

FILED
2026 MAR 03 03:52 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 26-2-07563-8 KNT

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| CABRINA MURPHY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MONEYLION TECHNOLOGIES, INC.; and MONEYLION, INC.,<br><br>Defendants. | NO.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE CONSUMER PROTECTION ACT, RCW 19.86, AND THE COMMERCIAL ELECTRONIC MAIL ACT, RCW 19.190 |

COMES NOW the Plaintiff, CABRINA MURPHY, by and through undersigned counsel, for causes of action against the above-named Defendants, MONEYLION TECHNOLOGIES, INC. and MONEYLION, INC. (hereinafter "Defendants" or "MoneyLion"), and complains and alleges as follows:

## I. NATURE OF THE ACTION

1. MoneyLion is a financial technology company that offers cash advances, loans, and investment products and services to consumers, including in Washington. MoneyLion offers these products and services through its website (www.moneylion.com) and mobile application (the "MoneyLion App" or "Defendants' App").

2. As one way of attracting new customers to its platform, MoneyLion compensates existing users who refer their friends and contacts to MoneyLion. MoneyLion encourages existing users to refer friends and contacts by giving significant compensation for successful



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

referrals. MoneyLion's referral incentives are based on the number of successful referrals, encouraging users to send referral messages to multiple contacts rather than a single recipient. For example, under the incentives offered by the referral program as of March 2025, MoneyLion enticed its users with $60 in compensation for "each friend you successfully invite to join MoneyLion."

3. While this may be a profitable and shrewd approach to new customer acquisition, in practice the MoneyLion referral program violates the Washington Consumer Electronic Mail Act ("CEMA"), RCW 19.190.010 *et seq.* MoneyLion violated and continues to violate CEMA by initiating commercial text messages and assisting its existing customers in the transmission of commercial text messages to Washington residents without first obtaining the recipient's clear and affirmative consent. *See* RCW 19.190.060(1). The legislature determined that this practice constitutes "an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the [CPA]." RCW 19.190.060(2). Thus, a violation of CEMA is a *per se* violation of the CPA. *See* RCW 19.190.100; *Wright v. Lyft, Inc.*, 182 Wn.2d 718, 723 (Wash. 2017).

4. Plaintiff received a commercial electronic text message ("Referral Text Message") with a referral link to sign up for MoneyLion from her friend, an existing MoneyLion user. She did not consent to receive that message. Plaintiff received the text message on her mobile phone, which has a phone number assigned to a Washington resident for cellular telephone service.

5. Plaintiff brings this action as a class action on behalf of herself and similarly situated Washington residents who received MoneyLion's illegal spam texts. Plaintiff's requested relief includes an injunction to end these practices, an award to Plaintiff and class members of statutory damages for each illegal text, and an award of attorneys' fees and costs.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## II. PARTIES

6. Plaintiff Cabrina Murphy is a natural person residing in Burien, Washington.

7. Defendant MoneyLion Technologies, Inc. is incorporated in Delaware and headquartered in New York, NY. Defendant provides and markets its products and services nationwide, including to Washington consumers, and conducts related business activities throughout Washington state and in this County. Defendant is a "person" as that term is defined in RCW 19.190.010(11) and RCW 19.86.010(1).

8. Defendant MoneyLion, Inc. is incorporated in Delaware and headquartered in New York, NY. Defendant provides and markets its products and services nationwide, including to Washington consumers, and conducts related business activities throughout Washington state and in this County. Defendant is a "person" as that term is defined in RCW 19.190.010(11) and RCW 19.86.010(1).

## III. JURISDICTION

9. Jurisdiction in this Court is appropriate under RCW 2.08.010 and RCW 4.92.090.

10. This Court has personal jurisdiction over Defendant insofar as Defendant does business in King County in the State of Washington. In addition, the claims alleged in this action arose from, without limitation, Defendant's assistance in the transmission of commercial electronic text messages to consumers within the State of Washington. In addition, Defendant intended, knew, or is chargeable with the knowledge that any out-of-state actions would have a consequence within Washington.

11. Venue is proper in King County Superior Court because, at all relevant times, Defendant resided in this County and transacted business in King County (including without limitation by distributing the mobile app to consumers in King County). RCW 4.12.025.

//

//

//



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## IV. FACTUAL ALLEGATIONS

### A. Referral marketing programs that target Washington residents with commercial electronic text messages may violate CEMA.

12. Referral marketing programs typically incentivize a company's current customers to send promotional messages to friends and contacts in exchange for compensation or rewards. In general, these programs leverage the personal connections of existing customers to target potential new customers and allow companies to communicate direct marketing messages by way of a trusted source. And because the marketing messages are sent by a known friend or contact, the recipient is more likely to read and consider the message, which often comes as an interjection in an otherwise personal text message thread between two friends.

13. Referral marketing programs targeting Washington residents are subject to CEMA. As applicable here, CEMA prohibits persons conducting business in the state of Washington from "initiat[ing] or assist[ing] in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages." RCW 19.190.060(1).[1] In a separate subsection, CEMA provides narrow statutory exceptions, including where the recipient "has clearly and affirmatively consented in advance to receive these text messages." RCW 19.190.070(1)(b). CEMA further states that a violation of this section is "an unfair or deceptive act in trade or commerce and an

---

[1] "'**Initiate the transmission**' refers to the action by the original sender of an electronic mail message or an electronic text message, not to the action by any intervening interactive computer service or wireless network that may handle or retransmit the message, unless such intervening interactive computer service assists in the transmission of an electronic mail message when it knows, or consciously avoids knowing, that the person initiating the transmission is engaged, or intends to engage, in any act or practice that violates the consumer protection act." RCW 19.190.010(7).

"'**Assist the transmission**' means actions taken by a person to provide substantial assistance or support which enables any person to formulate, compose, send, originate, initiate, or transmit a commercial electronic mail message or a commercial electronic text message when the person providing the assistance knows or consciously avoids knowing that the initiator of the commercial electronic mail message or the commercial electronic text message is engaged, or intends to engage, in any practice that violates the consumer protection act." RCW 19.190.010(1).



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

unfair method of competition for the purpose of applying the consumer protection act." RCW 19.190.060(2).

14. The statute provides a private cause of action to persons who received texts in violation of CEMA to enjoin further violations. RCW 19.190.090; *Wright v. Lyft, Inc.*, 189 Wash. 2d 718, 728 n.3 (2017) (stating that "a plaintiff may bring an action to enjoin any CEMA violation").

15. Plaintiff also may recover damages for a CEMA violation by way of a CPA action. *See Wright*, 189 Wash. 2d at 727.

16. "Damages to the recipient of . . . a commercial electronic text message sent in violation of this chapter are five hundred dollars, or actual damages, whichever is greater." RCW 19.190.040.

**B. Defendants' referral marketing program violates CEMA.**

17. MoneyLion promotes the sale of its products and services through its referral marketing program. Through its referral marketing program, MoneyLion assists in the transmission of electronic commercial text messages to Washington residents who have not clearly and affirmatively consented in advance to receive these text messages, and in fact have not consented to receive these text messages at all. Accordingly, MoneyLion violates CEMA.

18. Through this program, MoneyLion authors and supplies pre-composed text messages, including promotional language offering a financial incentive to the recipient. MoneyLion generates and embeds a unique referral link within the pre-composed message. The referral link is created by MoneyLion and is used to attribute successful sign-ups to the referring MoneyLion user and to determine whether a reward will be paid.

19. The referral message supplied by MoneyLion is short, informal, and optimized for mobile communication, making it particularly suited for transmission by text message.

20. MoneyLion's referral flow is accessed through the MoneyLion Mobile App, which affirmatively encourages users to invite friends by text message. MoneyLion designed



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

and ordered the entire chain of events by which its commercial referral messages are formulated, composed, and transmitted to recipients, including by authoring the message content; personalizing the message using sender information; designing a system for the user to import contacts into the MoneyLion Mobile App and track the status of referrals; generating the referral link; encouraging dissemination by text message; and conditioning payment of referral rewards on successful recipient sign-ups.

21. In the MoneyLion Mobile App, it takes just a few taps for a MoneyLion user to select one or more contacts from a phone and transmit a text message that has been prepopulated with a marketing message and a customized referral link to download the MoneyLion Mobile App. The customized referral link allows MoneyLion to associate any new customer sign-up with the existing customer who generated the link.

22. MoneyLion's refer-a-friend program is prominently promoted in the MoneyLion Mobile App with a button referencing the prevailing compensation offer for referring new customers. The referral workflow is designed so that a user can generate and send a referral text message with just a few taps, without any intervening consent verification step.

23. The MoneyLion Mobile App guides users through the referral process, step-by-step, as depicted in **Figure 1** below.

//

//

//

//

//

//

//



McNaul Ebel pllc
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816




*Figure 1: Introduction and Tour Screen (captured March 25, 2025)*

24. The Main Referral Screen in the MoneyLion Mobile App is depicted in **Figure 2** below. This screen explains the prevailing incentives for new and existing users, encourages users to send the link to multiple friends to earn compensation for each successful referral, and shows previous referrals and their status. From this screen, MoneyLion facilitates the transmission of precomposed marketing messages and customized sign-up links by its users with just a few additional taps.

//

//

//

//

//

//

//

//

//



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816




*Figure 2: Main Referral Screen (captured March 23, 2025)*

25. As depicted in **Figure 3** below, the MoneyLion Mobile App prompts the user to import their saved contacts to facilitate direct transmission of text messages to specific recipients within the native MoneyLion Mobile App environment. Selecting this option prompts MoneyLion to request permission to access the user's address book and enables MoneyLion to programmatically retrieve contact information for use within the referral interface, rather than requiring users to manually copy or enter recipient information. The "sync your contacts" feature allows the MoneyLion Mobile App to access and utilize users' address books, including cell phone numbers, to populate and operationalize the referral workflow within the MoneyLion



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Mobile App, reducing friction in identifying and selecting recipients for referral messages. By incorporating contact data into the referral process and simultaneously encouraging sharing by text message, MoneyLion materially increased the likelihood that its commercial referral messages would be transmitted by SMS to Washington residents without prior express consent.




***Figure 3: Contact Import Screen (captured March 23, 2025)***

26. Once the user imports contacts into the MoneyLion Mobile App, the user is encouraged to send multiple text messages at once to maximize referral compensation. As depicted in **Figure 4** below, each time a contact is selected to receive a text message, the text inside the button for transmitting the text messages changes to correspond with the compensation available for successfully referring that number of friends. For illustration purposes in Figure 3, two contacts have been selected, making the potential compensation total $120.

//

//



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816




*Figure 4: Contact Selection Screen (captured March 23, 2025)*

27. Once the user sends the text messages from the Contact Selection screen, the words "Invite sent" appear next to the recipients' names and phone numbers, as depicted in **Figure 5** below.

//

//

//

//



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816




*Figure 5: Contact Selection Screen Showing "Invite sent" (captured March 23, 2025)*

28. On the Main Referral Screen, the user can track the status of outstanding and past referrals using the Referral Tracker, as depicted in **Figure 6** below. The Main Referral Screen also provides step-by-step instructions for users on sharing the link and earning referral rewards.

//

//

//

//



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816




*Figure 6: Referral Tracker and Instructions on How to Earn screen (captured March 23, 2025)*

29. The Referral Tracker on the Main Referral Screen updates whenever a user sends referral links to friends. The user can also send follow-up text messages to these friends using the "Nudge" feature on this screen, as shown in **Figure 7** below.




*Figure 7: Referral Tracker Screen (captured March 23, 2025)*

30. The Referral Tracker can be expanded to provide additional detail about outstanding referrals. On the Detailed Referral Tracker Screen, depicted at **Figure 8** below, the user can see the status of previous referral message recipients, "Nudge" these recipients with



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

follow-up text messages, and see how many days remain to qualify for the prevailing compensation offer.




*Figure 8: Detailed Referral Tracker Screen (captured March 23, 2025)*

31. MoneyLion "gamifies" the entire referral experience with eye-catching graphics and countdown timers, as shown in **Figure 9**, **Figure 10**, and **Figure 11** below.




*Figure 9: Promotional Countdown Screen (captured March 23, 2025)*

//

//

//

//

//



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816




*Figure 10: Referral Rush Highlight Screen (captured March 23, 2025)*




*Figure 11: Nudge Reminder Screen (captured March 23, 2025)*

32. MoneyLion affirmatively encourages dissemination of referral links by text message, including by presenting text messaging as a default or prominently suggested sharing option. The MoneyLion Mobile App also contains a FAQ that describes the referral program in greater detail, as shown in **Figure 12** and **Figure 13** below. Notably, as shown in Figure 12, the FAQ explicitly encourages users to send referral links via text message. As shown in Figure 13, the FAQ further states that there are ***no*** conditions for existing users to send referral messages. It does not mention restrictions on sending text messages to Washington residents or the need to obtain consent (let alone clear and affirmative consent) prior to transmitting a Referral Text Message.

//

//



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

# How do referrals work?

December 21 2023 4:40pm • Est. Read Time: 2 MIN

## How do referrals work?

1. **How do I refer someone to MoneyLion?**

There are a few ways to refer a friend:

- Share your $RoarTag or referral code on social media via Instagram stories, Instagram feed, Facebook stories, or Facebook feed.
- Share with your contact list. Send referral links to your friends with a text message.
- Share your referral link through the Android/iOS share option.
- Spread the word and let your friends know about your $RoarTag or referral code.

2. **I don't have a RoarMoney[SM] account, can I still refer someone?**

Yes, you can. You will just not be eligible to receive your up to $55 bonus until you create a

help.moneylion.com

*Figure 12: FAQ Screen 1 (captured March 23, 2025)*

//

//

//

//

//

//



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Once the campaign conditions have been fulfilled, it may take up to 2 weeks to deposit the reward bonus into your RoarMoney℠ account.

6. **Where will I receive my referral bonus?**

You will receive your bonus in your RoarMoney℠ account.

7. **Are there any conditions for me to refer someone?**

No, you may refer anyone you'd like to MoneyLion.

8. **Is there an expiry date on the referral bonus program?**

Yes, please refer to our terms and conditions for the latest program end date.

9. **As a referrer, do I have to switch my direct deposit to my RoarMoney℠ account to claim the $50 bonus?**

No, you simply need to have a RoarMoney℠ account while your referee the direct deposit campaign requirements.

help.moneylion.com

*Figure 13: FAQ Screen 2 (captured March 23, 2025)*

33. Through its refer-a-friend program, MoneyLion substantially assists and supports its existing users in transmitting Referral Text Messages to Washington residents who have not consented to receive those messages. Defendants substantially assist and support users in sending Referral Text Messages by, *inter alia*: a) encouraging and incentivizing its users to send Referral Text Messages by compensating them with money; b) technologically enabling its users to initiate Referral Text Messages through the MoneyLion Mobile App; c) generating and



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

providing unique user-specific referral links that a text recipient can use to sign up for Defendants' services; and d) composing text to be sent as part of the "Invite friends" text messages.

34. MoneyLion's referral program is structured to materially scale and amplify outbound commercial text transmissions. The compensation model increases with the number of successful referrals, encouraging users to send referral messages to multiple recipients rather than a single contact. The referral workflow allows users to select multiple contacts simultaneously and transmit prepopulated commercial messages in rapid succession. The "Nudge" feature prompts repeat transmissions to prior recipients who have not yet signed up, increasing message persistence. Countdown timers and time-limited promotional graphics create urgency designed to accelerate message dissemination. The Referral Tracker reinforces continued outbound messaging by displaying pending referrals and highlighting additional earning opportunities. Collectively, these features are engineered to increase the volume, frequency, and persistence of commercial text transmissions, rather than merely facilitate passive product sharing.

35. MoneyLion knew or had reason to know that its commercial referral messages would be transmitted by text message to Washington residents without consent. Alternatively, MoneyLion consciously avoids knowing whether users send Referral Text Messages without obtaining recipients' clear and affirmative consent in advance to receive these messages.

36. MoneyLion does not directly obtain recipients' clear and affirmative consent in advance to receive Referral Text Messages.

37. MoneyLion does not require referring users to verify or confirm that recipients have provided advance, clear, and affirmative consent to receive MoneyLion's commercial text messages.

38. MoneyLion does not employ controls within the MoneyLion Mobile App to ensure that users obtain recipients' clear and affirmative consent in advance to receive Referral Text Messages before enabling them to send the messages.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

39. MoneyLion does not advise customers not to send Referral Text Messages to Washington residents.

40. MoneyLion does not disable, restrict, or modify its referral text functionality for Washington users or Washington recipients, despite CEMA's consent requirements.

41. MoneyLion permits users to import phone numbers with Washington area codes directly into the MoneyLion Mobile App but does not implement technical safeguards to prevent referral messages from being sent by text message to recipients who have not consented or who have Washington area codes.

42. MoneyLion does not display a conspicuous consent confirmation immediately adjacent to the text-transmission function requiring the referring user to affirm that the recipient has provided clear and affirmative consent. Instead, the referral workflow is structured to minimize friction and maximize transmission volume.

43. MoneyLion's Referral Text Messages and the accompanying hyperlinks are commercial in nature. MoneyLion derives revenue from new customer signups. Because the MoneyLion products and services promoted via the text messages at issue were offered "for sale" within the meaning of RCW 19.190.010(3), the messages at issue were commercial electronic text messages.

44. The conduct challenged here is not merely the passive "design" or "distribution" of a product with lawful uses. Rather, MoneyLion actively structured, incentivized, and operationalized a system that formulates, composes, prepopulates, tracks, and monetizes the transmission of commercial text messages. The referral program's economic function depends on the transmission of such messages, and MoneyLion's conduct goes beyond neutral product design into the direct orchestration of commercial SMS marketing.

**C. Defendants substantially assisted in the transmission of Referral Text Messages to Plaintiff.**

45. At all times relevant to this Complaint, Plaintiff resided in the State of



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Washington.

46. At all times relevant to this Complaint, Plaintiff subscribed to a cellular telephone number with a Washington area code.

47. Plaintiff's cellular telephone has the capacity to send and receive transmissions of electronic text messages.

48. On December 3, 2025, Plaintiff received an unsolicited commercial electronic text message inviting her to sign up for MoneyLion. The text included MoneyLion's pre-composed, standardized language and contained a unique referral link directing Plaintiff to create an account.

49. Below is a screenshot of the commercial electronic text message Plaintiff received:






MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

50. Plaintiff received the Referral Text Message from a friend whose cellular telephone number is assigned a Washington area code.

51. Plaintiff's friend did not customize or modify the text message before sending it; the message Plaintiff received consisted of MoneyLion's standardized referral language and referral link.

52. Plaintiff did not provide clear and affirmative consent to receive the MoneyLion referral text message.

53. On information and belief, the MoneyLion Mobile App did not prompt Plaintiff's friend to confirm that she had obtained Plaintiff's clear and affirmative consent to receive the MoneyLion referral message.

54. The Referral Text Message did not contain any opt-out mechanism, instructions to stop future messages, or information identifying how Plaintiff could prevent future MoneyLion referral texts.

55. Plaintiff's privacy was invaded by the text message she received promoting Defendants' products and services. Plaintiff has no ability to opt out of MoneyLion referral texts sent by third-party users and remains subject to future messages so long as MoneyLion continues to operate its referral program in its current form. Thus, Plaintiff faces an imminent threat of future harm. Without an injunction, Plaintiff has no realistic way to stop the transmission of future MoneyLion referral messages to her personal phone number.

## V. CLASS ACTION ALLEGATIONS

56. Class Definition. Plaintiff bring this case as a class action on behalf of a Class defined as:

//

//

//

//



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

> All persons[2] who, within the applicable statute of limitations period, received a MoneyLion Referral Text Message to their cellular telephone number while residing in Washington.

Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, and Defendants' legal representatives, assignees, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

57. Numerosity and Ascertainability. The Class is so numerous that joinder of all members is impracticable. On information and belief, the Class has more than 1,000 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court. Class membership can be ascertained through a combination of Defendants' referral records and objective evidence maintained by class members, including screenshots, message logs, and phone records.

58. Commonality. There are numerous questions of law and fact common to Plaintiff and members of the Class. The common questions of law and fact include, but are not limited to:

a. Whether Defendants assisted the transmission of commercial electronic text messages to recipients residing in the State of Washington in violation of RCW 19.190.060;

b. Whether a violation of RCW 19.190.060 establishes all the elements of a claim under Washington's Consumer Protection Act, RCW 19.86 *et seq*.;

c. Whether Plaintiff and the proposed Class are entitled to an injunction enjoining Defendants from sending the unlawful texts in the future;

d. Whether class-wide injunctive relief is necessary to prevent future harm; and

e. The nature and extent of Class-wide injury and damages.

59. Typicality. Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims, like the claims of the Class, arise out of the same common course of conduct by

---

[2] As that term is defined in RCW 19.190.010(11) and RCW 19.86.010(a).



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Defendants and are based on the same legal and remedial theories.

60. Adequacy. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and class actions involving unlawful text messages under Washington law. Plaintiff and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor their counsel have interests that are contrary to or that conflict with those of the proposed Class.

61. Predominance. Defendants have a standard practice of assisting the transmission of commercial electronic text messages to subscribers of cellular telephone numbers residing in the State of Washington. The common issues arising from this conduct predominate over any individual issues. Adjudication of these issues in a single action has important and desirable advantages of judicial economy.

62. Superiority. Plaintiff and members of the Class have been injured by Defendants' unlawful conduct. Absent a class action, however, most Class members likely would find the cost of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. The members of the Class are readily identifiable and there will be no significant difficulty in the management of this case as a class action.

63. Injunctive Relief. Certification for injunctive relief is appropriate under CR 23(b)(2). Defendants' conduct is uniform as to all members of the Class. Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole. Plaintiff further alleges, on information and belief, that the texts described in this Complaint are substantially likely to continue in the future if an injunction is not entered.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## VI. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### Violations of Washington's Commercial Electronic Mail Act, RCW 19.190, *et seq*. (By Plaintiff on behalf of the Class)

64. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

65. Washington's CEMA prohibits any "person," as that term is defined in RCW 19.190.010(11), from initiating or assisting the transmission of an unsolicited commercial electronic text message to a Washington resident's cellular telephone or similar device.

66. Defendants are "persons" within the meaning of the CEMA, RCW 19.190.010(11). Defendants are corporations, and the statute's definition of "person" includes a "corporation."

67. Defendants "conduct business in the state" of Washington, as used in RCW 19.190.060. Defendants advertise and sell products and services to customers in Washington and serve a market for products and services in Washington.

68. Defendants' prepopulated referral text messages, photos, and accompanying hyperlinks are each "electronic commercial text messages" within the meaning of CEMA. The messages, photos, and hyperlinks promote and advertise MoneyLion's products and services. The primary purpose of the text messages, photos, and hyperlinks is to induce the recipient to use MoneyLion's financial services and products, which generate revenue for MoneyLion.

69. MoneyLion provided this assistance and support by developing a chain of events leading to the transmission of commercial text messages whereby it, *inter alia*, (a) created the referral program and advertised it and made it available in its mobile app, which allows users to easily send "refer-a-friend" text messages, (b) incentivized and paid MoneyLion users to participate in the referral program, (c) prompted users to select individuals from their contacts to receive the referral message, (d) composed commercial messages for its existing customers to send along with a personalized hyperlink to sign up for MoneyLion, (e) prompted users to select



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

recipients from their synced contacts within the MoneyLion Mobile App environment, (f) created a "nudge" feature that increased the volume of unsolicited commercial text messages, and (g) prepopulated the text message field on the sender's device with the composed commercial message and personalized hyperlink.

70. Plaintiff and Class members are Washington residents who received the text messages.

71. Defendants knew, or should have known, that the text messages were transmitted to Washington residents who have not "clearly and affirmatively consented in advance to receive these text messages." RCW 19.190.070(1)(b). Defendants do not require existing customers to obtain the necessary clear and affirmative prior consent to send Referral Text Messages. There is no mechanism for existing customers to obtain the necessary consent. Defendants do not obtain the required consent prior to assisting in the transmission or initiating the transmission of the messages.

72. Defendants market their referral programs nationwide, including to residents in Washington. Defendants do not check whether a Washington consumer has consented to receive the messages before assisting in sending Referral Text Messages.

73. Defendants knew, or consciously avoided knowing, that these text messages were sent to telephone numbers assigned to Washington residents for cellular telephone service equipped with short message service or similar capabilities.

74. Plaintiff and the Class were injured as a direct and proximate result of Defendants' conduct because (a) they received a commercial electronic text message that Defendants assisted in transmitting to their assigned telephone number, and (b) they never provided clear and affirmative consent in advance to receive the commercial electronic text messages from Defendants.

75. Plaintiff and Class members are entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.060(1).



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## SECOND CLAIM FOR RELIEF

**Per se violation of Washington's Consumer Protection Act, RCW 19.86, et seq.**
**(By Plaintiff on behalf of the Class)**

76. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

77. Plaintiff and Class members are "persons" within the meaning of the CPA, RCW 19.86.010(1).

78. Defendants violated the CEMA by assisting in the transmission of an unsolicited commercial electronic text message to Plaintiff and Class members' cellular telephones or similar devices.

79. A violation of the CEMA establishes all five elements of Washington's Consumer Protection Act as a matter of law. RCW 19.190.100; *Lyft*, 189 Wash.2d at 731–32.

80. Defendants' violations of the CEMA are unfair or deceptive acts or practices that occur in trade or commerce under the CPA. RCW 19.190.100.

81. Defendants' unfair or deceptive acts or practices vitally affect the public interest and thus impact the public interest for purposes of applying the CPA. RCW 19.190.100.

82. Pursuant to RCW 19.190.040(1), damages to each recipient of a commercial electronic text message sent in violation of the CEMA are the greater of $500 for each such message or actual damages, which establishes the injury and causation elements of a CPA claim as a matter of law. *Lyft*, 189 Wash.2d at 731–32.

83. Defendants engaged in a pattern and practice of violating the CEMA. As a result of Defendants' acts and omissions, Plaintiff and Class members have sustained damages, including $500 in statutory damages, for each and every text that violates the CEMA. The full amount of damages will be proven at trial. Plaintiff and Class members are entitled to recover actual damages and treble damages, together with reasonable attorneys' fees and costs, pursuant to RCW 19.86.090.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

84. Under the CPA, Plaintiff and members of the Class are also entitled to, and do seek, injunctive relief prohibiting Defendants from violating the CPA in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the members of the Class, requests judgment against Defendants as follows:

A. That the Court certify the proposed Class;

B. That the Court appoint Plaintiff as Class Representative;

C. That the Court appoint the undersigned counsel as counsel for the Class;

D. That the Court should grant declaratory, equitable, and/or injunctive relief as permitted by law to ensure that Defendants will not continue to engage in the unlawful conduct described in this Complaint;

E. That, should the Court permit Defendants to engage in or rely on spam texting, it enter a judgment requiring Defendants to adopt measures to ensure CEMA compliance, and that the Court retain jurisdiction for a period of at least six months to ensure that Defendants comply with those measures;

F. That the Court enter a judgment awarding any other injunctive relief necessary to ensure Defendants' compliance with the CEMA;

G. That Defendants be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify members of the Class;

H. That Plaintiff and all Class members be awarded statutory damages in the amount of $500 for each violation of the CEMA pursuant to RCW 19.190.040(1) and treble damages pursuant to RCW 19.86.090;

I. That the Court award pre- and post-judgment interest;

J. That the Court enter an order awarding Plaintiff reasonable attorneys' fees and costs; and



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

K. That Plaintiff and all Class members be granted other relief as is just and equitable under the circumstances.

Plaintiff demands a jury on all claims so triable.

DATED this 3rd day of March, 2026.

MCNAUL EBEL PLLC

By: /s/ Kaleigh N. Boyd
Kaleigh N. Boyd, WSBA #52684
600 University Street, Suite 2700
Seattle, WA 98101
Tel: 206-467-1816
Fax: 206-624-5128
Email: kboyd@mcnaul.com

Edwin J. Kilpela, Jr.*
WADE KILPELA SLADE LLP
6425 Living Place, Suite 200
Pittsburgh, PA 15206
Tel: 412-314-0515
Email: ek@waykayslay.com

Evan E. North*
NORTH LAW PLLC
1900 Market Street, Suite 800
Philadelphia, PA 19103
Tel: 202-921-1651
Email: evan@northlawpllc.com

*Attorneys for Plaintiff and the Proposed Class*

**pro hac vice* application forthcoming